McDOWELL, Robert, Appellant in
No. 83–1455,

v.

AVTEX FIBERS, INC., Appellant in
No. 83–1434.

Nos. 83–1434, 83–1455.

United States Court of Appeals,
Third Circuit.

Argued March 8, 1984.

Decided July 12, 1984.

Thomas A. Allen (argued), Peter J. Mooney, White & Williams, Philadelphia, Pa., for appellant, cross-appellee.

Alice W. Ballard (argued), Anna M. Durbin, Samuel & Ballard, P.C., Philadelphia, Pa., for appellee, cross-appellant.

Before ALDISERT, HIGGINBOTHAM and PECK,* Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This case arises from a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b) (1976 & Supp. IV 1980). Plaintiff/appellee Robert L. McDowell ("McDowell") initiated the underlying action against Avtex Fibers, Inc. ("Avtex"), alleging that his discharge violated the ADEA. A jury found in favor of McDowell on the issue of liability, but the issue of damages was submitted to Magistrate

* Honorable John W. Peck, United States Court of Appeals for the Sixth Circuit, sitting by designa-    tion.

Hall[1] by stipulation of the parties. Magistrate Hall awarded McDowell lost earnings minus mitigation as compensatory damages and an equal amount in liquidated damages on the ground that Avtex's violation was willful.

Avtex appeals from that portion of the order awarding liquidated damages arguing that the trial court applied an incorrect legal standard in finding Avtex's violation to have been willful and that, in any event, the evidence was insufficient to support a finding of willfulness. McDowell in his cross-appeal challenges the trial court's deduction of unemployment compensation benefits and pension plan benefits from his back pay award.[2]

We believe that the trial court applied a proper legal standard in finding a willful violation of the ADEA and that the evidence was sufficient to support a finding of willfulness. We thus affirm the district court's order on this issue. With regard to the trial court's deduction of pension plan and unemployment compensation benefits from McDowell's back pay award, we find it improper; accordingly, we will reverse that portion of the order of the trial court and will remand this case for reconsideration of the damages question in a manner consistent with this opinion.[3]

## I.

The principal issue before this court concerns the total amount of damages for which Avtex is liable. In presenting the issue of damages to the trial court, McDowell asked that he be awarded lost earnings or "back pay" measured generally as the amount which he would have earned

had he not been unlawfully discharged. Seeking to mitigate damages for which it would have been liable, Avtex argued that, in addition to certain agreed upon reductions, the back pay award should be further reduced by the amounts received by McDowell as unemployment compensation benefits and pension plan benefits after his discharge by Avtex. The parties stipulated that the pension payments were derived from a pension plan to which Avtex had made payments without contributions from McDowell. Moreover, the parties stipulated that Avtex would pay into this pension plan so as to return McDowell's pension benefits to the level they would have reached but for the interruption of his employment due to his unlawful discharge. McDowell has been reinstated with his entitlement under the pension plan fully restored.

In addition to back pay, McDowell was awarded by the trial court an equal amount in the form of "liquidated damages." Such damages are proper if Avtex willfully violated the ADEA. Avtex argued, however, that the trial court erred in finding willfulness and that the evidence was insufficient to support a finding of willfulness.

## II.

### Mitigation of Damages

#### A. Unemployment Compensation Benefits

We will address first McDowell's challenge to the trial court's deduction of unemployment compensation benefits from his back pay award. Without benefit of this court's decision in *Craig v. Y & Y Snacks, Inc.,* ("*Craig*") 721 F.2d 77 (3d

1. This case was tried before Magistrate William F. Hall, Jr. pursuant to the parties' stipulation under 28 U.S.C. § 636(c)(1). The parties stipulated further that any appeal would be brought directly to this court. In *Wharton-Thomas v. United States of America,* 721 F.2d 922 (3d Cir. 1983), this court held that a magistrate does have the authority to enter a final, appealable judgment if the parties consent. Because the parties have consented in this case, we will consider Magistrate Hall's order final for purposes of this appeal.

We will refer to this proceeding before the magistrate as the proceeding before the trial judge or trial court interchangeably throughout this opinion.

2. Avtex Fibers is the appellant in No. 83–1434 and cross-appellee in No. 83–1455. McDowell is the appellee in No. 83–1434 and cross-appellant in No. 83–1455.

3. We will grant McDowell's motion to supplement the issues on appeal and to file a supplemental brief on cross-appeal.

Cir.1983), the trial court reasoned that the propriety of deducting unemployment compensation benefits from McDowell's back pay award under ADEA is entrusted to the discretion of the trial judge. Accordingly, the trial court exercised its discretion and found the deduction of unemployment benefits to be appropriate.

After the trial court decided this case, this court confronted an identical issue in *Craig, id.,* brought under Title VII. In *Craig,* this court aligned itself with the Fourth, Ninth and Eleventh Circuits and adopted the rule that unemployment benefits may not be deducted from a Title VII back pay award. *Id.* at 85; *see Brown v. A.J. Gerrard Manufacturing Co.,* 715 F.2d 1549, 1550 (11th Cir.1983) (in banc) (per curiam); *Kauffman v. Sidereal Corp.,* 695 F.2d 343, 346–47 (9th Cir.1982) (per curiam); *EEOC v. Ford Motor Co.,* 645 F.2d 183, 195–96 (4th Cir.1981), *rev'd on other grounds,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), *adhered to original position on remand,* 688 F.2d 951, 952 (4th Cir.1982) (per curiam).

■ Although *Craig* concerned a Title VII case, we can find no persuasive reason for reaching a different result simply because this case involves an ADEA violation rather than a Title VII violation. There is no legislative history or case law speaking to this precise issue. Instead, similarities between Title VII and the ADEA and this court's reasoning in *Craig* require a holding in this case that unemployment compensation benefits may not be deducted from an ADEA award.

As the Supreme Court noted in *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978),

[t]here are important similarities between the two statutes, to be sure, both in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the

prohibitions of the ADEA were derived *in haec verba* from Title VII.[4]

Thus, while fashioning a rule to further the ends of Title VII, the majority stated in *Craig* that the deduction of unemployment compensation from a back pay award may not be left to the discretion of the trial court. Accordingly, it declared that back pay is "the presumptive remedy for unlawful employment." *Craig,* 721 F.2d at 85.

The majority in *Craig* reasoned that permitting the deduction of unemployment compensation benefits would undercut Title VII's purpose of ending discrimination to the extent that the back pay award is reduced by unemployment compensation. Moreover, the majority relied on Title VII's purpose of compensating injured victims in a "make whole" fashion when it forbade the unemployment compensation deduction. *Id.* at 84. It quoted with approval the Fourth Circuit's reasoning that

[a]wards of back pay under Title VII should not be affected by a system of compensation which is designed to serve a wholly independent social policy. To decide otherwise would undercut to some degree the corrective force of a Title VII back pay award.

*Id., quoting EEOC v. Ford Motor Co.,* 645 F.2d 183, 196 (4th Cir.1981).

The majority also reasoned that enunciating a rule of law would "foster uniformity in applying the back pay remedy" and would "avoid the conflicting results reached when such an issue is left to the discretion of the district courts, which may differ in their individual resolution of the legal and policy questions." *Craig,* 721 F.2d at 85.

The majority in *Craig* thus adopted the rule that unemployment compensation benefits may not be deducted from a Title VII back pay award. They adopted this rule

---

**4.** Title VII with respect to race, color, religion, sex or national origin, and the ADEA with respect to age make it unlawful for an employer "to fail or refuse to hire or to discharge any individual," or otherwise to "discriminate against any individual with respect to his com-

pensation, terms, conditions, or privileges of employment," on any of those bases. 42 U.S.C. § 2000e–2(a)(1) (1976); 29 U.S.C. § 623(a)(1) (1982). *Compare* 42 U.S.C. § 2000e–2(a)(2) (1970 & Supp. V 1975), *with* 29 U.S.C. § 623(a)(2) (1982).

even though under Title VII back pay itself is considered a discretionary remedy. *Lorillard v. Pons*, 434 U.S. at 584, 98 S.Ct. at 872; *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).

Under the ADEA, however, back pay is not a discretionary award. Unlike Title VII, the ADEA mandates that an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages ..." while preserving no discretion for the district court in this regard. 29 U.S.C. § 216(b). As the Supreme Court indicated in *Lorillard v. Pons*, 434 U.S. at 584, 98 S.Ct. at 872.

> the ADEA incorporates the FLSA provision that employers "shall be liable" for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of backpay is a matter of equitable discretion, *see Albemarle Paper Co. v. Moody*, 422 U.S. at 421, 95 S.Ct. at 2373 (footnote omitted).

In our view the reasons supporting this court's decision concerning Title VII in *Craig* apply even more so to this case involving the ADEA. Indeed, as stated above, while the ends of the two statutes are virtually identical, the ADEA back pay awards, unlike Title VII back pay awards, are not discretionary. Thus, we conclude that unemployment compensation benefits, even if supported by contributions by the employer, may not be deducted from an ADEA back pay award. *See Craig*, 721 F.2d at 85; *Brown v. A.J. Gerrard Manufacturing Co.*, 715 F.2d at 1550.

## B. Pension Plan Benefits

Having decided that unemployment compensation benefits may not be deducted from ADEA back pay awards, we next turn to the question of whether the deduction of pension plan benefits should be treated differently from the deduction of unemployment compensation benefits. We believe that these two forms of employee benefit plans are indistinguishable for the purpose of deciding this case.

Here, pension plan benefits, like unemployment compensation benefits, are collateral benefits. Both unemployment compensation benefits and pension plan benefits are designed to serve social policies independent of those served by back pay awards. The employer contributes to both forms of benefits either directly or indirectly.

Not only should both benefits be treated identically because of these similarities, but the reasons set forth in *Craig* for precluding the deduction of unemployment compensation benefits from Title VII back pay awards also support our decision not to allow the deduction of pension plan benefits even though the wrongful termination together with vested rights in the benefits made the employee eligible for the benefits. Just as with unemployment compensation benefits, a rule proscribing the deduction of pension plan benefits would dilute the purpose of ending discrimination, "[t]o the extent that a back pay award is reduced by [pension plan benefits] ..." *Craig*, 721 F.2d at 84 (analyzed in terms of Title VII and unemployment compensation benefits). Moreover, "awards of back pay under [the ADEA] should not be affected by a system of compensation which is designed to serve a wholly independent social policy." *Craig, id.*, quoting *Ford Motor Co.*, 645 F.2d at 196 (analyzed in terms of Title VII). Finally, "[t]o decline to deduct state [pension plan benefits] in computing back pay is not to make the employees more than whole .... Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received."[5] *NLRB v. Gul-*

---

5. We recognize that in those cases involving the NLRA, such as *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), the Supreme Court left it to the discretion of the NLRB to determine whether credit should be given for unemployment compensation benefits. However, the Court's rationale in approving the Board's decision which refused to deduct unemployment compensation benefits seems equally applicable to this ADEA setup.

*lett Gin Co.,* 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951) (emphasis in original) (analyzed in terms of the NLRA and unemployment compensation benefits).

More importantly, deducting pension benefits received by McDowell from his back pay award could potentially reduce the amount in liquidated damages to which he otherwise could be entitled while benefitting the employer by giving it a windfall—a result certainly not intended by the ADEA. This apparent inequitable result of mitigating the back pay award occurs because under the ADEA liquidated damages are measured by doubling the back pay award. *See* 29 U.S.C. § 216(b). Consequently, for every dollar deducted from back pay a dollar is deducted from the liquidated damages award; thus, the employer would end up paying two dollars less in total damages for every dollar McDowell received in pension plan benefits or unemployment compensation benefits. Hence, even though McDowell would be made whole as to back pay (that is, he will not have suffered any net dollar loss), he would not get the full benefit of the liquidated damages provision.

The employer, on the other hand, would end up paying less back pay than he would have spent in actual pay but for the discrimination. Additionally, if liquidated damages are deemed appropriate he would pay less liquidated damages than he would have been liable for paying, but for the pension benefits which McDowell received.

For these reasons, in this case we believe unemployment compensation benefits and pension plan benefits should be treated identically with regard to the propriety of deducting them from ADEA back pay awards. Thus, under the rule enunciated in this case, it would be improper for a court to permit either unemployment compensation benefits or pension plan benefits to be deducted from ADEA back pay awards. A different result would put us in conflict with *Craig* and the spirit of the ADEA.

## III.

### Liquidated Damages

The final question which we must decide is whether the trial court applied an improper legal standard in finding Avtex guilty of a willful violation of the ADEA and therefore liable for liquidated damages. We believe that the trial court applied the correct standard in finding Avtex's violation of the ADEA to have been willful. Finally, we conclude that the evidence was sufficient to support a finding of willfulness. We therefore will affirm on this issue.

The ADEA states that its provisions shall be enforced in accordance with the powers, remedies and procedures provided in the Fair Labor Standards Act. *See* 29 U.S.C. § 626(b). Section 216(b) of the Fair Labor Standards Act provides, in pertinent part, that a violating employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 626(b) provides that "[a]mounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b).

In *Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir.1980), this court articulated the standard for determining whether a particular violation under the ADEA was willful:

It is sufficient to prove that the company discharged the employee because of age and that *the discharge was voluntary and not accidental, mistaken, or inadvertent.* In our view, it would also be sufficient to prove that the discharge was precipitated in reckless disregard of consequences.

*Id.* at 283. (emphasis added).

It is conceded that the trial court correctly used this statement as the gov-

erning precept. *See* Mem.Op. at 7, *reprinted in* App. at 13. In applying this precept, the court then stated that it could "find *no* basis for concluding that the plaintiff's discharge was *not* voluntary and that it was accidental, mistaken or inadvertent." *Id.* at 8, *reprinted* in App. at 14 (emphasis added). That the trial court stated its conclusion as a double negative is more a matter of literary style than a stumble into reversible error. Because the court correctly recognized the burden of proof when announcing its choice of the controlling legal precepts, we are not willing to say that a reviewing court is required to conclude that a perhaps inartful linguistic form used to apply the precept demonstrated a fatal breach.[6]

Moreover, even accepting arguendo that the trial court was stating a burden, we are not inclined to reverse on this issue because of the distinction between the burden of persuasion and the burden of production. The Supreme Court distinguished these two burdens for Title VII cases in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed. 207 (1981). Although the burden of persuasion, or proof, always rests with the plaintiff, once plaintiff establishes a prima facie case of unlawful discrimination, the burden of production, or going forth with the evidence, to rebut the presumption shifts to the defendant. "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id.* at 254, 101 S.Ct. at 1094. If, however, defendant presents sufficient evidence to rebut the presumption, the burden of production returns to the plaintiff and merges with his burden of persuasion to prove intentional discrimination. *Id.* at 256, 101 S.Ct. at 1095. This court has applied this burden scheme in age discrimination cases arising under the ADEA. *See, e.g., Massarsky v. General Motors Corp.*, 706 F.2d 111, 117–18 (3d Cir.1983).

The trial court's language can be interpreted as a determination that the defendant did not meet its burden of production, a burden imposed on it by *Burdine*. By stating that it could "find no basis for concluding that the plaintiff's discharge was not voluntary," it can be said that the trial court was merely recognizing defendant's silence in the face of the presumption of discrimination raised by plaintiff. The entry of judgment for plaintiff, therefore, was not only correct but mandated by *Burdine*.

We, thus, conclude that the court did not implicate the burden scheme and its choice of language, although perhaps illconsidered, was a matter of style. To the extent it may be argued that the court did implicate the burden scheme, we conclude that the trial court simply determined that the defendant failed to rebut plaintiff's prima facie case.

We will affirm the district court's finding of willfulness. We will reverse its finding concerning damages. Accordingly, we will remand this case solely for the purpose of applying *Craig* to the damages question in a manner consistent with this opinion.

---

**6.** Avtex also contends that the record does not contain sufficient evidence to support an award of liquidated damages. Mr. McDowell introduced evidence that he was discharged while younger individuals were retained and that these individuals were less qualified than he. Moreover, he argued that Avtex's justifications for retention of these younger individuals were a mere pretext for discriminating against him on the basis of age. In addition, Mr. McDowell offered expert testimony concerning the statistical significance of Avtex's pattern of discharge which fell more heavily on older employees in the protected class. Finally, Mr. McDowell revealed information in retained employees' files which he argued demonstrated Avtex's preference for younger employees. We believe this evidence is sufficient to support a finding of willfulness.