James L. MAXFIELD

v.

SINCLAIR INTERNATIONAL and
David H. Sinclair, President of
Sinclair International, Appellants.

No. 84–1518.

United States Court of Appeals,
Third Circuit.

Argued May 13, 1985.
Decided July 3, 1985.

Benjamin E. Zuckerman (argued), Sherr, Moses & Zuckerman, P.C., Norristown, Pa., for appellants.

Frank P. Murphy (argued), Murphy and Farrell, Norristown, Pa., for appellee.

Before HUNTER and SLOVITER, Circuit Judges, and COHEN, District Judge.[*]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff James L. Maxfield brought this action against Sinclair International and David H. Sinclair, its president, (jointly referred to as Sinclair), alleging that Maxfield's forced retirement on December 31, 1980, a month after his 65th birthday, violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1982) (as amended). There was a bifurcated trial before a jury. The jury first found in Maxfield's favor on liability, and then, in the damages phase, awarded $33,398 for past damages and $7,500 for future damages through special interrogatories. On appeal, Sinclair contends that the evidence did not establish a prima facie case of discrimination and that the district court erred in various determinations with respect to damages. We will affirm.

### I.

### FACTS

Maxfield was employed at Sinclair from 1940 until 1980, except for a three-year absence during World War II. He began working by servicing various parts manufactured and sold by Sinclair to paper mills, and was promoted in 1957 to a sales position which he retained until his termination.

At trial, Maxfield testified that the first time retirement was mentioned to him was the May before his 65th birthday when he went to the company headquarters to pay a condolence call on David Sinclair after the death of his father, the company's founder. Maxfield related the conversation as follows:

> David said, "You are going to be 65 come the end of the year when you are going to retire."
>
> I said, "No, I am not going to retire, David."

* Hon. Mitchell H. Cohen, United States District Court for the District of New Jersey, sitting by

> He said, "Yes, you are going to retire, Jim. We are going to retire you."
>
> And I said, "Well, you can work until you are 70 now and that is my desire, to work until 70."
>
> And he said, "Well, Jim, if you do not retire as we wish we will find reasons to retire you."

T. 1.29.

A month later, Maxfield learned that he would be replaced by Robert Dunlap, a 42 year old who had recently been promoted from serviceman to part-time salesman. Maxfield wrote to Sinclair protesting the company's decision to retire him and requesting a meeting to discuss the matter further. At a sales meeting held in September, Sinclair reiterated without giving any reasons that Maxfield was to be retired.

Maxfield followed that meeting with another letter, again requesting an explanation for the company's decision. Sinclair returned the original of the letter with a handwritten notation that read as follows:

> Jim—You are beating a dead horse. I'm sorry you can't let it go and retire with dignity. I have protected you so you would have a chance to do that. Please accept the fact that it is time for a change. If you want to quit now let me know. If you want to continue to end year as agreed fine but I expect your full cooperation with Dunlap, Divine and all others. If you can't do that there is no sense in going on."
>
> Signed Dave.

T. 1.41.

At the conclusion of plaintiff's case, defendants moved for a directed verdict, arguing that Maxfield had failed to establish a prima facie case because Maxfield was replaced by a person between the ages of 40 and 70 who was himself within the class protected by the ADEA. The district court denied the motion, holding that plaintiff need not prove replacement by a person outside the protected class and that the

designation.

evidence was sufficient to permit the jury to find that Maxfield was terminated because he had reached his 65th birthday.

As its defense, Sinclair asserted that Maxfield was terminated because of unsatisfactory job performance. Sinclair confirmed that Maxfield was forced to retire and stated he had not been told that his poor performance over the past several years was the real reason for his termination to avoid upsetting him. Much of the trial was devoted to testimony about Maxfield's sales performance and a comparison of the performances of Maxfield and Dunlap.

At the conclusion of the liability phase of the bifurcated trial, the jury was instructed, *inter alia,* as follows:

> I have already told you that the plaintiff bears the burden, bears the burden of proof, and he must prove by a preponderance of the evidence that he was prevented from continuing as an employee because of his age. Now, to satisfy this burden, the plaintiff must show that the plaintiff's age was a determining factor in the defendants' decision to retire him.
>
> What do we mean by that? Well, that is the plaintiff must show that but for his age he would not have been retired.
>
> Stated another way, the plaintiff must prove that age was a determining factor in the decision to retire him, and a determining factor is a factor considered by the employer which made a difference in the decision, and to go back to what I told you before, the plaintiff must show that but for his age he would not have been retired.

T. 4.154. The district court's explanation of plaintiff's burden of proof was a correct statement of the law of this circuit, *see Bellisimo v. Westinghouse Electric Corp.,* 764 F.2d 175, 179 (3d Cir.1985); *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984); *Smithers v. Bailar,* 629 F.2d 892, 896 (3d Cir.1980), and Sinclair did not object. The jury returned answers to special verdict interrogatories, finding that "age was a de-

termining factor in the defendants' decision to require [Maxfield] to retire" and that Maxfield failed to prove a willful violation of the ADEA. We turn first to Sinclair's claim that Maxfield failed to establish a prima facie case.

## II.

### PRIMA FACIE CASE

■ Congress expressly set forth in the ADEA that its purpose in enacting the statute was "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b). The statute makes it unlawful for a covered employer to discharge or involuntarily retire any individual below the age of 70 because of age. 29 U.S.C. § 623(a). The plaintiff has the initial burden of offering evidence that is sufficient "to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (construing Title VII, 42 U.S.C. § 2000e *et seq.*). Plaintiff may satisfy that burden by offering direct or circumstantial evidence. Direct evidence would include statements by the employer to the employee that s/he was being fired because of age. *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921 (2d Cir.1981). Because such direct evidence will often be difficult to obtain, the guidelines used in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for establishing a prima facie case in Title VII cases have been adapted to ADEA cases. *See Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 565 & n. 11 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *Smithers v. Bailar,* 629 F.2d 892, 894 (3d Cir.1980).

As originally articulated, the *McDonnell Douglas* test provided that a prima facie case of racial discrimination could be established by plaintiff showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

■ Sinclair argues that the fourth element of *McDonnell Douglas* requires proof in an ADEA case that the plaintiff was replaced by someone outside the protected class. No case holds that an ADEA plaintiff can recover only if s/he was replaced by someone younger than 40, and there is no reason to engraft the requirement on to the law.[1] In *Smithers v. Bailar*, the district court had determined that a prima facie case could be established by showing "that the position was ultimately filled by an employee who was younger than plaintiff." We quoted the district court without suggesting that the standard was incorrect. 629 F.2d at 895.

Courts that have addressed this issue squarely have universally permitted a prima facie case to be shown through proof that the favored person was younger than plaintiff. All have held that the replacement need not be younger than 40, the age at which ADEA protection begins. *See Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir.1985); *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir.1980); *cf. Haskell v. Kaman Corp.*, 743 F.2d 113, 119 n. 1 (2d Cir.1984) (*McDonnell Douglas* test framed as requiring proof of favorable treatment to a younger person rather than a person outside the protected class); *Cuddy v. Carmen*, 694 F.2d 853, 857 (D.C.Cir.1982)

(same); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982) (same).

In *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 562 (5th Cir.1983), *cert. denied*, 81 L.Ed.2d 364, 104 S.Ct. 2658, —— U.S. —— (1984), the court wrld that the fourth element of the *McDonnell Douglas* test could be satisfied by proof of either replacement by someone outside the protected class or by someone younger or by other proof that the discharge was because of age. That court had earlier recognized that age, unlike race or gender, is not an immutable characteristic, and that the realities of the workplace may demand that the replacement be experienced, thereby increasing the risk that the replacement might be over 40. *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir.1980).

Policy considerations support holding that a prima facie case may be established through proof of replacement by a younger person. If no intra-age group protection were provided by the ADEA, it would be of virtually no use to persons at the upper ages of the protected class whose jobs require experience since even an employer with clear anti-age animus would rarely replace them with someone under 40.

The probative value of the age of the replacement as evidence of discrimination will depend on the circumstances of the case. Although replacement by someone younger, without more, will not give rise to an inference of age discrimination, it has been noted that a substantial difference in the ages may be circumstantial evidence that gives rise to that inference. *See Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, (11th Cir.1985). *Accord Loeb v.*

---

1. The language in *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983), that a plaintiff "need show only that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably," repeated in *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d at

1395, was used in the context where the favored employees were in fact under 40 but neither opinion suggests that is a *sine qua non* for recovery. In fact, elsewhere in each opinion, we stated that a prima facie case will be made by showing replacement by a "younger" employee. *Duffy*, 738 F.2d at 1395 n. 2; *Massarsky*, 706 F.2d at 118 n. 13.

*Textron, Inc.*, 600 F.2d 1003, 1013 n. 9 (1st Cir.1979).

Sinclair's suggestion that if its construction of the statute were not accepted, "courts would be opening their doors to claims for discrimination under [the ADEA] by 45 year old employees replaced by 48 year olds," Brief for Appellant at 22, is frivolous. Moreover, we see little basis for any concern that replacement by a slightly younger employee will give rise to an ADEA claim, since proof of replacement by a younger person is not conclusive of discrimination but is merely one element in a set of circumstances that may give rise to an inference of discrimination. If the difference in ages of the two employees were insignificant, the district court would likely find that the evidence was insufficient to permit an inference of discrimination.

■ Consequently, we hold that an ADEA plaintiff may establish the fourth element of the *McDonnell Douglas* test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination.[2] Maxfield's replacement by an employee more than 20 years younger was sufficient to satisfy this test.

III.

SOCIAL SECURITY BENEFITS

■ During the damages phase of the trial, the district court held that Maxfield's Social Security benefits could not be set off against damages, but it permitted Sinclair to introduce evidence of those benefits for the limited purpose of showing that Maxfield failed to use his best efforts to mitigate damages. The jury awarded damages

for lost past earnings in the amount of $33,398.

Sinclair argues that the district court's failure to set off the Social Security benefits received by Maxfield against the backpay award resulted in a double recovery for Maxfield and an improper penalty against Sinclair whose violation of the ADEA was found by the jury not to be willful. In the only case on point, *Wise v. Olan Mills, Inc. of Texas*, 495 F.Supp. 257 (D.Colo.1980), the court found that Social Security benefits should not be offset. Even more significant for us is that the reasoning applied by this court in two recent cases dealing with setoffs supports the district court's action here.

In *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3d Cir.1983), we held that unemployment compensation should not be deducted from a Title VII backpay award.[3] We reasoned that Congress had explicitly required a deduction for interim earnings and amounts earnable with reasonable diligence and that its failure to provide for other setoffs should be given effect. *Id.* at 82. We also noted that the NLRB has refused to deduct those benefits in actions brought under the National Labor Relations Act (NLRA), 29 U.S.C. § 160(c) (1982), the act that served as the model for Title VII's backpay provision. We presumed from Congress' failure to alter the language to require a different construction that it intended a similar construction. *Id.* at 82–83.

Under the collateral source rule payments under Social Security, welfare programs, unemployment compensation and similar programs have all been treated as collateral benefits which would not ordi-

2. Maxfield argues that he did not need to satisfy *McDonnell Douglas* because he presented direct evidence of discrimination. While we agree that direct evidence may also establish a prima facie case, we need not evaluate the sufficiency of direct evidence in light of our holding that he adequately established a circumstantial case under *McDonnell Douglas*.

3. Earlier, in *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977), on which Sinclair relies, we affirmed a backpay

award in which the district court had deducted unemployment compensation benefits, but the propriety of that setoff was neither raised nor decided. Subsequently, in *Rodriguez v. Taylor*, 569 F.2d 1231, 1243 n. 23 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), we declined to "pass[ ] judgment on the wisdom" of *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir.1977), in which the court permitted a setoff of unemployment compensation.

narily be set off against damages awarded. In *Craig,* we rejected the argument that the collateral source rule provided plaintiffs with an inequitable double recovery, finding "no reason why the benefit should be shifted to the defendant...." *Id.* at 83. Relying on the Supreme Court's decision in *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337 L.Ed. 95, 337 (1951), upholding the NLRB's practice, we concluded that unemployment benefits were collateral. *Id.* at 83–84.

Finally, we found that the objectives of ending employment discrimination and compensating victims in a make whole fashion would be furthered by a rule precluding deduction of the benefits. *Id.* at 84. We also rejected the argument that the decision whether to offset should be left to the discretion of the district court, favoring instead "to fashion uniform rules ... to further the statutory objectives...." *Id.* at 85.

In *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 215–17 (3d Cir.1984), *vacated and remanded on other grounds,* —— U.S. ——, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985), we applied *Craig* in an ADEA action and held that unemployment benefits could not be offset. We stated that "the reasons supporting this court's decision concerning Title VII in *Craig* apply even more so to [a] case involving the ADEA," *id.* at 217, because unlike Title VII, backpay under the ADEA is not discretionary, since it incorporates the provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) (1982),[4] making backpay a mandatory element of damages. 29 U.S.C. § 626(b).[5]

We also held in *McDowell* that pension plan benefits were indistinguishable from unemployment compensation and should not be deducted from the backpay award. Both were designed to serve social policies independent of those served by a backpay award. Thus, we extended the holding of *Craig* to pension plan benefits in order not to "dilute the purpose of ending discrimination." 740 F.2d at 217.

Our later decision in *Dillon v. Coles,* 746 F.2d 998 (3d Cir.1984), which permitted a setoff, is not to the contrary because the result turned on the particular factual situation presented. In *Dillon,* the employer was the state which, under state law, had the right to recover the benefits received. *Id.* at 1002. We saw "no reason to require the state to file a separate suit to recoup" the benefits and therefore permitted the reduction. *Id.* at 1007. Nothing in the *Dillon* decision undermines the validity of *Craig* in suits against private employers, as here.

The reasoning of *Craig* holding no setoff of unemployment benefits in a Title VII case, and *McDowell* applying the same

---

**4.** Some of the provisions of the FLSA were altered to provide in the ADEA for the addition of injunctive relief in suits brought by private individuals, *compare Powell v. Washington Post Co.,* 267 F.2d 651 (D.C.Cir.1959) (injunctive relief only available in suits brought by the Secretary) *with* 29 U.S.C. § 626(b) (permitting equitable relief "[i]n any action brought to enforce" the ADEA); to change the circumstances under which liquidated damages were available, *compare* 29 U.S.C. § 260 (1982) (liquidated damages may be reduced or disallowed if employer shows action was in good faith or with reasonable grounds to believe it did not violate FLSA) *with* 29 U.S.C. § 626(b) (liquidated damages available only for willful violations of the ADEA); and to decline to borrow the criminal penalty in the FLSA, 29 U.S.C. § 216(a) (1982).

**5.** Backpay is a discretionary remedy under Title VII even though it "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (footnote omitted). Once a court has decided to award backpay, however, plaintiffs suing under Title VII and the ADEA are standing on the same footing. *McDowell,* 740 F.2d at 216–17. Although Title VII contains an explicit requirement that interim earnings be deducted, and the ADEA does not, courts have held that the ADEA does require mitigation of damages and have consistently deducted interim earnings from backpay awards. *See, e.g., Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 119 (4th Cir.1983); *Coleman v. City of Omaha,* 714 F.2d 804, 808 n. 5 (8th Cir.1983); *Orzel v. City of Wauwatosa Fire Department,* 697 F.2d 743, 756–57 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983).

holding to the ADEA, governs this case. There are no significant discernible differences between Social Security benefits, unemployment benefits and pension benefits for this purpose. All would ordinarily be received by an employee, such as Maxfield, only after s/he has been discharged or involuntarily retired. Social Security benefits also are regarded as a collateral source, *see Smith v. United States*, 587 F.2d 1013, 1015–18 (3d Cir.1978) (suit brought under Federal Tort Claims Act), and as in *Craig*, we see no reason why the benefit of the collateral funds should shift to the defendant. The quotation relied upon in *McDowell* is equally applicable here:

> Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.

*NLRB v. Gullett Gin Co.*, 340 U.S. at 364, 71 S.Ct. at 339 (emphasis in original) *quoted in McDowell*, 740 F.2d at 217–18 (footnote omitted). As between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer. Moreover, permitting a deduction of Social Security benefits could effectively eliminate the benefit of the ADEA to employees in the 65 to 70 age group, since all would presumably be entitled to Social Security benefits. Such an effect would be inconsistent with the congressional purposes in extending the ADEA to that age group. 29 U.S.C. § 631(a) (1982) (amending 29 U.S.C. § 631(a) (1976) to increase maximum age to 70).

Sinclair contends the failure to offset the benefits is punitive because the jury found the violation was not willful. This misconstrues the statutory effect of such a finding. If the violation is found to have been willful, the statute requires doubling the damages. 29 U.S.C. § 626(b). Sinclair thus has received the benefit of the jury's finding by the district court's failure to

double. That finding should not affect the manner in which the compensatory damages are computed.

In connection with Sinclair's claim that Maxfield failed to mitigate damages, the district court admitted the testimony as to Maxfield's Social Security benefits and Sinclair was permitted to, and did, argue to the jury that Maxfield was better off after his forced retirement. The jury apparently believed otherwise. We see no reason to disturb its verdict.

## IV.

### FRONT PAY

Sinclair's other principal contention is that the jury's award of $7,500 for front pay should be set aside. It maintains that front pay is not an available remedy under the ADEA and that even if it is, it should not have been awarded in this case because Maxfield failed to request reinstatement. The trial judge in this case rejected both contentions, as do we for the same reasons.

Although this court has not yet spoken on whether an award of future lost earnings is precluded by the ADEA, having reserved that issue in *Wehr v. Burroughs Corp.*, 619 F.2d 276, 283–84 (3d Cir.1980), the line of cases we find most persuasive allows such an award. As Judge Weinfeld wrote in *Koyen v. Consolidated Edison Co. of New York*, 560 F.Supp. 1161, 1168 (S.D.N.Y.1983), "To deny [authority to grant front pay] would defeat a purpose of the Act to make a victim of discrimination 'whole' and to restore him to the economic position he would have occupied but for the unlawful conduct of his employer."

Moreover, it is significant that whereas the FLSA has no provision for future damages, when Congress enacted the ADEA it added the following provision to the remedies taken from the FLSA:

> In any action brought to enforce this chapter, the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without

limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or overtime compensation under this section.

29 U.S.C. § 626(b). The inclusion of equitable relief strengthens the conclusion that Congress intended victims of age discrimination to be made whole by restoring them to the position they would have been in had the discrimination never occurred.

 Front pay, an award for future earnings, is sometimes needed to achieve that purpose. Ordinarily, an employee would be made whole by a backpay award coupled with an order for reinstatement. Reinstatement is the preferred remedy to avoid future lost earnings, but reinstatement may not be feasible in all cases. *See Goldstein v. Manhattan Industries, Inc.,* 758 F.2d at 1438–49. There may be no position available at the time of judgment or the relationship between the parties may have been so damaged by animosity that reinstatement is impracticable. *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984), *Cancellier v. Federated Department Stores,* 672 F.2d 1312, 1319 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). In such circumstances, the remedial purpose of the statute would be thwarted and plaintiff would suffer irreparable harm if front pay were not available as an alternate remedy to reinstatement. *Whittlesey,* 742 F.2d at 728. Since reinstatement is an equitable remedy, it is the district court that should decide whether reinstatement is feasible. *See Goldstein v. Manhattan Industries, Inc.,* 758 F.2d at 1448; *Davis v. Combustion Engineering,* 742 F.2d 916, 923 (6th Cir.1984); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1100–01 (8th Cir.1982). *See also* Crawford and McRae, *Front Pay in Lieu of Reinstatement as a Remedy in ADEA Litigation,* 9 Empl.Rel.L.J. 705, 708 & n. 11 (1984). Of course the amount of damages available as front pay is a jury question.

We agree with Judge Broderick, the trial judge in this case, that an award for future lost earnings is no more speculative than awards for lost earning capability routinely made in personal injury and other types of cases. The plaintiff's duty to mitigate damages should serve as an effective control on unjustified damage awards. *See Whittlesey v. Union Carbide Corp.,* 742 F.2d at 728.

In this case, counsel for Sinclair argued strenuously to the jury that Maxfield had not taken reasonable steps to mitigate and therefore neither front pay nor backpay should be awarded. Counsel stressed that because of the amount of Maxfield's income from Social Security and other sources, it would have been unrealistic for him to attempt to find alternate employment. The jury rejected the argument that Maxfield failed to mitigate, and we find no basis for setting aside its decision.

 Alternately, Sinclair argues that Maxfield waived his right to request front pay by failing to request reinstatement. Sinclair relies on our decision in *Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir. 1980), to support its contention that Sinclair waived the issue. We agree with the district court that *Wehr* is distinguishable.

In *Wehr,* plaintiff, who had been discharged from his job as an engineer when he was 44, had thereafter entered law school, which he had completed by the time of trial. He had not requested any future relief in his complaint and had specifically disclaimed any desire for reinstatement in his former position as an engineer during pretrial proceedings. *Id.* at 283 nn. 17 & 18. Under these circumstances, the court ruled that Wehr had removed the issue of future damages from consideration.[6] In contrast, here, the complaint contained a specific request for future damages, there-

---

**6.** Similarly, in *Kolb v. Goldring, Inc.,* 694 F.2d 869 (1st Cir.1982), cited by Sinclair, plaintiff had succeeded in finding alternate employment two months after his discharge, and plaintiff was held entitled to collect backpay during the period it took for his salary at his new job to exceed that which he would have earned at his old job. It appears that reinstatement was not an issue in the case and therefore front pay in lieu of reinstatement was foreclosed.

by preserving the issue. Since the district court found that in the present case "reinstatement would clearly be an undesirable remedy," App. at 20, the front pay award was permissible. *See EEOC v. Prudential Federal Savings and Loan Association,* 763 F.2d 1166, 1173 n. 2 (10th Cir.1985).

We find no error in the district court's determination that reinstatement was not feasible for Maxfield, and see no reason to set aside the jury's damage award.

### V.

#### EXPERT TESTIMONY

Finally, Sinclair argues that future damages were not available because no expert testified to establish Maxfield's projected earnings and to reduce those earnings to present value. In *Kolb v. Goldring, Inc.,* 694 F.2d 869 (1st Cir.1982), on which Sinclair relies, plaintiff sought to recover a raise that he claimed he would have received had he remained employed. The court held that in the absence of expert testimony, patterns of past pay increases or similar objective evidence, proof of future raises was too speculative to support the full jury award. *Id.* at 873. Maxfield, however, based his request for front pay only upon his former earnings history. There were no projections in earnings for which expert testimony was required. Nor do we believe that expert testimony was needed to reduce the damage award to present value. We agree with the district court that Maxfield's agreement to reduce the award by 10% was favorable to Sinclair and find no error with the court's taking judicial notice of the fact that experts had consistently testified to a rate that would have been considerably less favorable to Sinclair.

### VI.

#### CONCLUSION

For the reasons set forth above, the judgment of the district court will be affirmed.