Lal R. BHAYA, Richard Carner, William J. Haessler, Henry A. Parzick, and Earle Williams

v.

**WESTINGHOUSE ELECTRIC CORPORATION.**

Civ. A. No. 84–5381.

United States District Court, E.D. Pennsylvania.

Dec. 20, 1985.

Alan B. Epstein, Philadelphia, Pa., for plaintiffs.

Dona S. Kahn, Alison Pease, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Senior District Judge.

Plaintiffs brought suit against their former employer, Westinghouse Electric Co., alleging that their discharge from defendant's employ was in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621–634. The case was bifurcated for trial. On November 13, 1985, the jury returned a verdict for plaintiffs on the issue of liability. On No-

vember 19, the jury returned its verdict on damages in the form of special interrogatories which were designed to allow the court to mold a verdict after further briefing of the legal issues involved. Because the jury found that defendant's violation of ADEA was willful, I asked counsel to brief how liquidated damages should be calculated. In addition, I requested that counsel provide the court proposed calculations of the front pay award and its reduction to present value.

## A. Back Pay

At trial, the parties presented evidence on the salaries plaintiffs would have earned at Westinghouse until the time of trial had they not been discharged, and on the fringe benefits lost by plaintiffs because of their discharge, *i.e.*, medical insurance. They also presented evidence on the income received by plaintiffs that would properly be offset against a back pay award, *i.e.*, interim earnings and severance pay.[1] In special interrogatories, the jury was asked to determine the amount of back pay, if any, to which each plaintiff was entitled. The jury found each plaintiff entitled to back pay in the following amounts: Lal Bhaya, $133,-315; Henry Parzick, $81,889; William Haessler, $106,118; Earle Williams, $123,-583; and Richard Carner, $90,239.

## B. Front Pay

In their complaint, plaintiffs requested that the court require defendant to reinstate them to positions comparable to those from which they were discharged. Mindful that reinstatement is the preferred remedy to avoid future lost earnings, *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985), I nonetheless determined that reinstatement would not be a feasible remedy in this case. Defendant represented to the court that there are presently no jobs available to which plaintiffs could be reinstated. Defendant's Memorandum of Law in Support of a Directed Verdict on Remedies at 1. Defendant's assertions at trial were consistent with this representation. Plaintiffs were laid off when defendant eliminated the job classification in which they worked.[2] Defendant steadfastly maintained throughout the trial that to have placed plaintiffs in another job classification would have violated its contract with the union. Also, defendant submitted uncontroverted evidence that there has been a drastic reduction in force over the last three years at the Concordville plant where plaintiffs were formerly employed. For these reasons, I did not order reinstatement.

As an alternative, I allowed the parties to submit evidence on plaintiffs' entitlement to front pay. Counsel agreed, or represented to the court that they would agree, on the following: the monthly income each plaintiff would have earned at Westinghouse in the future had he not been discharged; for each plaintiff, the appropriate amounts to be offset against any award of front pay;[3] and the reduction of

---

**1.** Although each of the plaintiffs received pension benefits during all or part of the back pay period, these benefits are not properly deducted from ADEA back pay awards. *McDowell v. Avtex Fibers, Inc.*, 740 F.2d 214, 217–18 (3d Cir. 1984), *vacated and remanded on other grounds*, —— U.S. ——, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985).

**2.** The jury found that age was a determinative factor in defendant's decision to eliminate the negotiation engineer job classification in which plaintiffs held positions.

**3.** At trial, I ruled that pension benefits received by plaintiffs would not be offset against any award of front pay. In *McDowell*, the Third Circuit held that collateral benefits, specifically pensions and unemployment compensation, should not be deducted from ADEA back pay awards. 714 F.2d at 217–18. Pension benefits are no less collateral to front pay than to back pay awards. In each case, the benefits are paid from a fund to which the employer and/or the employees made contributions before the employees' discharge. As with back pay awards, the failure to deduct pension benefits from a front pay award will not make plaintiffs more than whole; the rationale that "[s]ince no consideration ... should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may ... receiv[e]," *id.* (quoting *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 339–40, 95 L.Ed. 337 (1951)), applies equally well to front pay and back pay awards.

any award of front pay to present value at a discount rate of 4%. The jury was asked in special interrogatories to determine whether each plaintiff was entitled to be compensated for a loss of future earnings and, if so, for how long into the future compensation should be given. The jury determined that four of the plaintiffs were entitled to front pay for the following periods of time: Lal Bhaya, 3 years, 11 months; Henry Parzick, 10 months; William Haessler, 3 years, 11 months; and Richard Carner, 4 years, 9 months.

Counsel's agreements and the jury's determination gave counsel the basis upon which their experts could calculate, for inclusion in the parties' briefs on molding the verdict, the amount of front pay to be awarded to each plaintiff and the reduction of these amounts to present value. However, only plaintiffs included these calculations in their brief. Given that defendant has neither objected to plaintiffs' calculations nor submitted calculations of its own, I accept plaintiffs' calculations of the amount of front pay, as reduced to present value at a 4% discount rate, to be awarded each plaintiff. I will award compensation for future loss of earnings in the following amounts: Lal Bhaya, $171,715.36; Henry Parzick, $38,880.29; William Haessler, $151,303.21; and Richard Carner, $134,943.19.

## C. *Liquidated Damages*

Relief under ADEA is governed by section 626(b), 29 U.S.C. § 626(b), which provides that:

> The provisions of this chapter shall be enforced in accordance with ... section[ ] ... 216 ... of this title.... Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of section[ ] 216 ... of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this

chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling ... reinstatement....

The relevant part of section 216, 29 U.S.C. § 216(b), provides that:

> Any employer who violates the provisions of ... this title shall be liable to the ... employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages.

Because the jury found, in answer to a special interrogatory, that defendant's violation of ADEA was willful, plaintiffs are entitled under these provisions to liquidated damages. The calculation of liquidated damages in this case raises two issues not expressly addressed by the courts in most ADEA cases: whether offsets against back pay should be taken before or after the back pay award is doubled as a measure of liquidated damages, and whether the plaintiffs' front pay award should be doubled based upon the finding that defendant willfully violated ADEA.

█ I conclude that offsets against back pay must be taken before the award is doubled as a measure of liquidated damages. In *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), the Third Circuit held that the district court had erred in not offsetting wages earned by the plaintiff during the back pay period against the plaintiff's back pay award. *Id.* at 1236. In a footnote, the court instructed that "insofar as the district court on remand may reduce the back pay award by setting off interim earnings, the equivalent liquidated damages penalty must be likewise reduced." *Id.* at 1236 n. 9. Recently, in *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214 (3d Cir.1984), *vacated and remanded*

*See also Maxfield,* 766 F.2d at 793–95 (applying rationale of *McDowell* to social security benefits).

fits).

*on other grounds,* —— U.S. ——, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985), the Third Circuit again interpreted ADEA to require this method of calculation. *Id.* at 218.[4] Therefore, plaintiffs' interim earnings and severance pay will be deducted from their lost past earnings before liquidated damages based on the amount of their back pay awards are calculated.[5]

I conclude also that plaintiffs' front pay awards should not be doubled as liquidated damages. Front pay is a remedy which may be awarded in lieu of reinstatement when special circumstances make reinstatement infeasible. Often, the circumstances which make reinstatement infeasible, such as economic conditions requiring a reduction in force, are beyond the defendant's control. Because they are punitive in nature, *see Trans World Airlines, Inc. v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), it would be inequitable to award liquidated damages under these circumstances.

Moreover, as a matter of statutory construction, ADEA should not be interpreted to allow the doubling of front pay awards as liquidated damages. Although section 626 of ADEA provides that "amounts owing" as a result of violations of ADEA shall be deemed unpaid minimum wages or unpaid overtime compensation under section 216, and section 216 in turn provides that the amount of unpaid minimum wages or unpaid overtime compensation shall be doubled as liquidated damages, the courts' authority to award front pay in lieu of reinstatement does not derive from these provisions. Rather, it is based on the courts' authority under ADEA to order equitable remedies, including reinstatement. *See Maxfield,* 766 F.2d at 795–96. Therefore, the reference in ADEA's liquidated

damages provision to amounts owing should not be deemed to include front pay. Furthermore, properly construed, front pay is not an amount presently owing, as it is compensation for future losses; this is precisely why a front pay award must be reduced to present value. For these reasons, the amount of plaintiffs' front pay awards will not be included in the calculation of their liquidated damages.

Finally, I reject defendant's suggestion that this issue would most equitably be resolved by reducing plaintiffs' front pay awards by the amount of their liquidated damages. While I recognize that defendant is correct in stating that other courts have made such a reduction or suggested that it might be appropriate to do so under certain circumstances, I need look no further than *McDowell,* in which the Third Circuit emphasized the importance of giving plaintiffs the full benefit of ADEA's liquidated damages provision, 714 F.2d at 218, to conclude that such a reduction should not be made in this case.

In accordance with the foregoing, I will award liquidated damages in the following amounts: Lal Bhaya, $133,315; Henry Parzick, $81,889; William Haessler, $106,118; Earle Williams, $123,583; and Richard Carner, $90,239.

### D. *Attorney's Fees*

Plaintiffs request that they be permitted to move for attorney's fees and costs after the completion of final briefing and argument on all motions presently before the court. I will grant plaintiffs' request.

---

**4.** Ironically, the use of this method of calculation in the instant case results in the same type of inequity that the Third Circuit sought to avoid in *McDowell.* Two of the plaintiffs in the instant case, both former engineers, accepted low paying jobs because they were not able to find work in their field after being discriminatorily discharged. The result of their efforts to return to gainful employment is that they will lose two dollars in damages for every one dollar

they earned. In *McDowell,* the Third Circuit deemed this type of inequity a reason not to offset pension benefits against ADEA back pay awards. 714 F.2d at 218.

**5.** These amounts have already been offset against lost past earnings in the jury's back pay awards.